## Case No. 17,527a.

### WHITAKER v. FREEMAN.

[1 Dev. (N. C.) 271, 280.]

Circuit Court, D. North Carolina.   May Term. 1827.

LIBEL—SEVERAL PLEAS—GENERAL ISSUE AND JUSTIFICATION—DECLARATION.

1. Of several pleas each is separate and independent as if contained in different records.

Therefore. where in an action for a libel the defendant pleaded not guilty and a justification, it was *held* that the admission of the libel contained in the latter plea could not be used either to estop the defendant to insist on his denial or as evidence to prove the publication on the issue joined on the former plea.

[Cited in Glenn v. Sumner, 132 U. S. 156, 157, 10 Sup. Ct. 41.]

2. A declaration for a libel must undertake to set out the very words.  To give the substance and effect is not sufficient. and if on the trial the libel produced does not correspond with that set out. the plaintiff must fail. since no reason can be assigned why the plaintiff should not be required to prove what he is required to allege.

This was an action on the case [by Jonathan Whitaker against Frederick Freeman for an alleged libel].

The declaration besides the usual introductory averments of good character, &c., alleged a special inducement that the plaintiff was a Congregational clergyman and minister of the gospel, and that the defendant designed to defame him in that character, &c. The declaration then charged the publication of a libel in the form of a letter directed to one H. P., from which particular sentences were selected, and stated in various forms in twenty-five different counts. all exactly alike in the inducements, &c., and setting forth the libellous sentences extracted, not according to the tenor, but charging that the letter contained, amongst other things, "the false, scandalous, malicious and defamatory matter following."

The libellous matter ·was charged in the different counts as follows: 1st count. "He lived within 30 miles of my father. The reports of his frequently whipping his wife are well known there." 2. "He was in the habit of whipping his wife." 3. "It was said that he whipped his wife." 4. "It was notorious there that he was in the habit of whipping his wife." 5. "I have it from good authority that he has been guilty of giving his wife repeated whippings." 6. "He has been guilty of stealing wood." 7. "He has been charged with stealing wood." 8. "I have it from good authority that he has been guilty of stealing wood." 9. "I have it from good authority that he has been charged with stealing wood." 10. "If he has credentials with him they are forgeries." 11. "If he has credentials with him they are probably forgeries." 12. "If he has credentials with him they are probably forgeries or were given him to get rid of him." 13. "If he has credentials they are forged." 14. "If he has credentials they are probably forged." 15. "If he has credentials they are probably forged or given him to get rid of him." 16. "He is an impostor, and should not be countenanced." 17. "He is an impostor. and should not be countenanced as a teacher of youth or preacher of religion." 18. "He is an impostor. and should not be countenanced or employed as a teacher of youth or preacher of religion." 19. "He should not be countenanced as a teacher of youth or

preacher of religion." 20. "He should not be employed as a teacher of youth or preacher of religion." 21. "He is an impostor, and should not be employed as a teacher of youth or preacher of religion." 22. "He is an impostor, and should not be countenanced or employed as a teacher of youth or moral instructor." 23. "My object in giving you information is that he may not be employed as a teacher of religion or instructor of youth." 24. "I give you information that he may not impose himself on other communities." 25. "You are at liberty to use this letter as you think proper, to prevent the people from being imposed on by him."

The declaration also contained a distinct set of counts, alleging the several libellous charges in this form: "They (innuendo, the plaintiff and one Daniel K. Whitaker) lived, etc.," in all other respects exactly like the first set. To this declaration, the defendant pleaded, 1st, not guilty, and 2nd, the truth of the matters contained in the libellous charges, as a justification.

On the trial, the letter being produced under a subpœna duces tecum, the material facts of it appeared to be in the following words: "No sooner did I cast my eye upon that part of a former letter of yours, informing me of your being visited (infested I should say) by two anti-Trinitarian preachers—a father and his son—than it was impressed upon my mind, Whitaker and his son are the men! The character of these men I know full well. They are from New Bedford, Massachusetts, which is within 30 miles of my father's house, and which place I have often visited, and visited this last fall. I have never heard any good of them. I have heard from the best authority, much evil. Not that they were capable of doing much hurt by preaching. They were considered by all as unfit to preach—as too immoral even to preach socinianism. The older man has been settled over the anti-Trinitarian church in New Bedford a number of years, and had also a school in that place until last spring or summer. Reports of his stealing wood, &c., whipping his wife unmercifully, and such like deeds had become so frequent, and his immoralities and infidelity so notorious, that his people (his church and congregation) were ashamed of him, and were anxious to get rid of him. At length (his congregation having dwindled away to almost his own family) and the parish wishing to have another minister, agreed to give him $1.200 if he would release them from their obligation to support him, and clear out. He found this for his interest and left N. B. These two men, no doubt finding their character gone in Massachusetts, have come to these ends of the earth. hoping to impose upon the good people. The young man has probably taken up preaching since he left his native state. They may have recommendations from those who were willing to have them leave those regions, and cared not for what impositions they might practice elsewhere. Their testimonials, if they have any, may be forged. It is a pity they should be permitted to impose upon the people anywhere, either as preachers or schoolmasters. I consider them as dangerous men in either occupation. You are at liberty to show the above, as far as you may think proper."

It was insisted on the part of the defendant that the letter produced did not support any one of the counts, and that the plaintiff was not entitled to a verdict; while on the part of the plaintiff it was contended that there was no material variance between the declaration and the letter, and that, if there was, the defendant, by his plea of justification, which admitted the publication of the libel as charged in the declaration, was estopped to deny the publication; or, if he was not technically estopped, yet the admission in that plea was evidence from which the jury upon the plea of not guilty must find against the defendant.

These points were fully argued by Mr. Gaston, for plaintiff, and Mr. Badger, for defendant. The Chief Justice expressed a wish that the trial should proceed, reserving these questions for his further consideration; upon which a verdict was taken for the plaintiff, with an agreement that, if the court should be against the plaintiff on the matters reserved, the verdict should be set aside, and a nonsuit entered.

MARSHALL, Chief Justice. This is an action on the case founded in a libel· published by the defendant. He has pleaded not guilty, and also justified the words as being true. At the trial, the plaintiff gave in evidence a letter written by the defendant to his correspondent in Raleigh, for the purpose of being shewn to others, which contains substantially the charges stated in the declaration, but in different language. The plaintiff insisted at the trial—1st, that the plea of justification admitted the publication of the libel charged in the declaration and dispensed with the necessity of proving it; 2dly, that the letter given in evidence supported the declaration. The jury found a verdict for the plaintiff, subject to the opinion of the court on the two points reserved.

1. On the first point the plaintiff produced cases to show that the plea of justification contains a formal admission of the words charged in the declaration, and would not be good without such admission. It must confess and avoid the charge. He then insisted that this being a confession on record was stronger than a confession made orally in the country, and estopped the party from denying it. In support of this last proposition he relied on the generally admitted dignity of record evidence, and cited Goddard's Case, 2 Coke, 4, G. In Goddard's Case the court, after saying that the jurors, who are sworn to say the truth, shall not be estopped, for an estoppel is to conclude one to say the truth,

added: "But if the estoppel or admittance be within the same record in which issue is joined upon which the jurors shall give their verdict, then they cannot find anything against that which the parties have affirmed and admitted of record, although the truth be contrary, for a court ought to give judgment upon a thing confessed by the parties, and the jurors are not to be charged with any such thing, but only with things in which the parties differ." In Goddard's Case, as was very properly remarked by the counsel for the defendant, there was a single plea, and the admission and agreement of parties, to which the observation of the court applies, are made in the particular and single issue which the jury was sworn to try. The language of the court is applicable to such a case only. The jury, though not generally "estopped to say the truth, is estopped if the admittance be within the same record in which issue is joined upon which the jurors shall give their verdict." When this case was decided a record contained a single issue, and the word "record" might be used generally in the same sense with the word "issue." The relative "which," in the last instance, refers to "issue," upon which issue the jurors shall give their verdict. This is proved clearly by the reason the court assigns why a jury is estopped from finding the truth contrary to such admission. It is that "a court ought to give judgment upon a thing confessed by the parties, and the jurors are not to be charged with any such thing." Now, the jurors are charged with every issue of the cause, and must pass on every issue. The court cannot give judgment until a verdict is found on each. Indeed, I do not understand the plaintiff to contend that the admission in one plea estops the jury from finding the truth in an issue made upon different plea; but that the admissions in one plea may be given in evidence in support of a different issue in the same cause. Goddard's Case, then, turns on a principle entirely distinct from this, and inapplicable to it. In Kirk v. Nowill, 1 Term R. 118, Buller, J., said that several pleas in the same cause were "as unconnected as if they were in separate records." In England, under the statute of 4 and 5 Anne, c. 16, the defendant is allowed to plead several pleas with leave of the court. In commenting upon this statute, Bacon says, in his Abridgment (vol. 5, p. 448): "It hath been frequently insisted upon that a defendant could not, within this act, plead contradictory and inconsistent pleas, as non assumpsit and the statute of limitations, etc." But the court has allowed such pleas, "observing that, if the benefit of the statute was to be confined to such pleas as are consistent, it would hardly be possible to plead a special plea and a general issue, the one always denying the charge, the other generally confessing and avoiding it, and the statute itself makes no distinction herein" In conformity with this rule the English books on the subject of pleading in all their forms of special

pleas state the general issue as being first pleaded. This would be entirely useless if the admissions contained in almost every special plea in bar could be used to disprove the facts alleged in the general issue. The English books do not, I believe, furnish a decision, or even a dictum, to countenance the idea that the matter of one plea can be brought in evidence against another. Their entire independence of each other has been often held. In Grills v. Mannell, Willes, 378, the attempt was to aid one plea, to which a demurrer had been filed, by an averment in a subsequent plea. Lord Chief Justice Willes, in delivering the opinion of the court, said: Though he has denied it in his second plea (that the opposite party was seised in fee), that will make no alteration, it being a known rule, and never controverted, that one plea cannot be taken in to help or destroy another, but every plea must stand or fall by itself. This opinion undoubtedly applies to the sufficiency of a plea in point of law. It asserts that one plea cannot be affected in point of law by a fact averred in a different plea, not that such facts may not be used as evidence, but it shows that the distinct pleas in the same cause are entirely independent of each other, and have no technical connexion. The same principle is laid down in the case of Kirk v. Nowill, 1 Term R. 118. That was an action of trespass, in which the general issue and three special pleas in bar were pleaded. The jury found three issues for the plaintiff and the last for the defendant. The plaintiff obtained a rule to show cause why judgment should not be entered up in his favor, because the last plea on which the verdict was found for the defendant was no bar to the action. The defect in the fourth plea was cured by an averment in the second and third; but the court made the rule absolute; and Buller said: "There never was such an idea before, as the counsel against the rule have suggested, that one plea might be supported by what was contained in another. Each plea must stand or fall by itself."

It is admitted that these cases apply only to the entire independence of different pleas in point of law; but they certainly show that the facts alleged in one plea have no more influence on an issue made upon a distinct plea in the same cause than if the same matter had been pleaded in a different cause. Ever since the statute of Anne it has been usual in England, where the defendant meant to justify, to plead also the general issue. This is so apparently useless if the plea of justification amounts to a confession which can be transferred to the general issue, that a court would not give leave to plead both pleas where the right depended on the court, and the defendant would not ask it where useless pleas are attended with heavy expenses. The principle in pleading that a special plea must confess and avoid the fact charged in the declaration was introduced at a time when the rigid practice of courts requir-

ed that every cause should be placed on a single point, and when it was deemed error to plead specially matter which amounted to the general issue; it was not allowed to deny the fact and to justify it. The defendant might select his point of defence; but, when selected, he was confined to it. That a single point might be presented to the jury, he was under the necessity of confessing everything but that point. The attention of the jury was not directed to multifarious objects, but confined to one on which alone the cause depended. This rigid rule was undoubtedly productive in many instances of great injustice. The legislature in England thought proper to change it, and to admit of various defences in the same action. But the forms of pleas remained. The permission to put in more than one with leave of the court did not vary the established forms. The admissions which are contained in one plea respect only the issue made up on that plea. The purpose for which the rigor of the ancient rule was relaxed by law would be defeated if the matter of one plea were to destroy another. There is no more reason that a plea of justification should prove the libel on issue of not guilty than that it should support a new action for a libel founded on the plea itself. It contains an averment that the words were true, and, if uttered by the defendant. not in his defence by way of plea, but as a substantive and voluntary allegation, would be the foundation of a new action. But such a plea has never been so considered. Whether the reason is that the allegation is in the form prescribed by law, which the defendant must use in order to avail himself of a defence allowed by law, or that the plea is put in by counsel, and the words are used by him, and are not the words of the defendant, the reason operates as strongly against their being used as testimony in support of the general issue as against their being used in support of a new action founded on the plea. Certain it is, that in England this use has never been made of them.

In the United States, generally, the rigor of the ancient rule that the defence shall be confined to a single point has been relaxed still further than in England. In most of the states —and North Carolina is understood to be among them—the defendant has a legal right, without asking the court, to plead as many several matters as may be necessary or as he may think necessary for his defence. It would be entirely inconsistent with the spirit and object of these acts, to permit forms of pleading devised at a time when judicial proceedings were regulated on a principle which they were intended to change to render one of the defences which they authorise, an absolute nullity. In England this has never been attempted. The courts there will not exercise the power they possess to restrain the defendant from pleading inconsistent pleas, because such restraints would defeat the policy of the act of parliament. The policy of the

acts passed on the same subject in the United States is still more apparent. It is true that in one state the principle maintained by the plaintiff in this cause has been sustained. The very respectable court of Massachusetts has decided that in an action for slander the admissions contained in a plea of justification do of themselves disprove the plea of not guilty. I am far from disregarding any opinion of that court. But I believe it stands alone, and that no similar decision has been made in any state of the Union. It constitutes no inconsiderable deduction from the authority of the decision in Massachusetts that there is reason for the opinion that it was disapproved generally by the bar. The legislature of that state has enacted that henceforth the plea of justification shall not in an action of slander be taken as proof that the words were spoken if not guilty be also pleaded. This act of the legislature shows I think that the general sense of the profession, even in that state, was opposed to the decision of the court.

I think a fair construction of the act which authorises the defendant to plead several pleas, that he may use each plea in his defence, and that the admissions unavoidably contained in one cannot be used against him in another. It was therefore incumbent on the plaintiff in this case to prove the libel charged in the declaration.

2. Has he done so? The letter offered in evidence contains substantially a charge that the defendant is guilty of facts essentially the same as are stated in the declaration, but the charge is made in words which vary materially from those alleged in the declaration, and they also state the fact as varying in form. Does this evidence support this issue on the part of the plaintiff? Reg. v. Drake, 3 Salk. 224, was an information for a libel, which stated the words according to their tenor. The word "nor" was inserted instead of "not." This variance, though it did not alter the sense. was held fatal. The court said that cujus quidem tenor imports a true copy. Holt said a libel may be described either by the sense or by the words. and therefore an information charging that the defendant made a writing containing such words is good, and in such case a nice exactness is not required, because it is only a description of the sense and substance of the libel. In Rex v. Beere, 12 Mod. 218, it was again held that "according to the tenor and effect following" imported a literal copy. The word "effect" alone, it was said, would have been too uncertain, but that word did not vitiate. and "tenor" was certain. The language of the court in Reg. v. Drake would seem to justify the inference that it is sufficient to state the sense and substance of the words in the information or declaration. If the charge be "that the defendant made a writing containing such words," that is good; "and in such case a nice exactness is not required because it is only a description of the sense and substance of the

libel." "A nice exactness" in what? I presume, in the proof of the words laid in the declaration. It does not purport to charge the whole libellous matter in the very words used in the libel, but to charge its sense and substance. The exact extent of this decision is not quite apparent. Whether the very words laid in the declaration must be proved, or the material words will be sufficient, or whether equivalent terms will satisfy the law, remains unexplained. It would be difficult to sustain the proposition that the word "tenor" was indispensable in order to bind the plaintiff to an exact recital of the words of the libel. That such words as these: The defendant made and published of and concerning the plaintiff "a paper writing in the words following, to-wit, he (the plaintiff meaning, &c.)" —would not import a recital of the very words as much as if the word "tenor" had been inserted. And if the sense and substance is all the charge imports, it is difficult to assign a reason why it would not be sufficient to charge the sense and substance in the declaration. Yet in Rex v. Beere, the court said that to state in the declaration that the defendant published a false, scandalous, and malicious libel, "according to the effect following," would be too uncertain. In Reg. v. Drake, the court took a distinction between slander written and spoken, which seems founded in reason: "Words are transient, and vanish in the air as soon as spoken, and can be no tenor of them; but when a thing is written, though every omission of a letter may not make a variance, yet, if such omission make a word of another signification, it is fatal."

We are left to conjecture whether this observation applies to every declaration for written slander in which words are specified or to such only as charge the libel according to tenor. Nelson v. Woolston Dixie, Cas. t. Hardw. 305, was an action for words spoken. The words which were spoken to the plaintiff's servant were laid in the declaration thus: "Where is the thief, your master; that confederate thief with Barker, who hath robbed me. I will hang him, by God; damn me if I do not." The variance was that the words proved were, "I will hang them both," instead of "I will hang him;" and this was held fatal. Lord Hardwicke said: "The words laid are not proved. An action for words may either lay the particular words spoken, as in this case, or may set out the substance of the words; and if the substance only be set out, as that the defendant charged the plaintiff with such or such a crime, &c., then it is sufficient to prove the substance of the words, and that was Stayley's Case, and there are precedents of that sort in Rastal's Entries, and the substance is laid in Latin: but where the very words are laid those words must be proved as laid, though the rules are not now so strict as formerly: for, if there should be a variation in the order of the words as proved to be spoken from what is laid in the declaration, so it be agreeable in substance, it is suffi-

cient." It is not stated in the report of this case that the declaration charged the slanderous words to be spoken according to tenor, but that it purported to state the words themselves; and in such case it was held necessary to prove them as laid. It is observable, too, that the variance does not consist in the slanderous words themselves, but in additional words, which are perhaps explanatory of the meaning of the words importing the slander. Nor is there any distinction as to the meaning of the slanderous words themselves, between threatening to hang both the thieves and threatening to hang the plaintiff only. That this variance was held fatal shows how nearly it was then supposed the proof must come to a declaration purporting to recite the slanderous words. The opinion expressed by Lord Hardwicke, that the declaration may set out the substance of the words, as that the defendant charged the plaintiff with such or such a crime, is contradicted in other cases, and seems now to be overruled in England; though in Richardson's Practice a declaration in that form is inserted, and has been supported, I am told, in the court of appeals of Virginia. It has also been supported in Pennsylvania. Kennedy v. Lowry, 1 Bin. 393. In England it is certainly held bad. In 3 Maule & S. 110, the plaintiff charged the defendant in one count with speaking "false, scandalous, and malicious words, to the effect following, &c." This was held bad after verdict. The court observed that in Dr. Sacheverell's Case [Harg. St. Tr. 828], the judges said: "By the law of England and the constant practice in all prosecutions by indictment or information for crimes or misdemeanors by writing or speaking, the particular words supposed to be criminal ought to be expressly specified in the indictment or information." The court added: "There seems no reason for any difference in this respect between civil and criminal cases. The action arises ex delicto." A reason assigned for this rule is that, were it otherwise, "it would be almost impossible to plead a recovery in one action in bar of another." In Wood v. Brown, 6 Taunt. 169, the declaration charged the defendant with publishing a libel "purporting. &c." On demurrer this was held bad, because by such a mode of declaring the plaintiff would withdraw from the defendant the power of demurring to the words of the libel. In Zenobio v. Axtell. 6 Term R. 162. where the libel was published in a foreign language, it was held ill to set forth its substance in a translation. The declaration ought to state the libel in the original language. In Wood v. Brown, 1 Marsh. C. P. 522, the declaration charged the defendant with publishing "a certain false, scandalous, malicious, and defamatory libel. purporting thereby that the plaintiff's beer was of a bad quality, &c." The court seemed to think that what was said by Lord Holt in Reg. v. Drake. furnished a strong argument in favor of the opinion that it was sufficient to set forth the sense and substance of the libel. "Here, how-

ever, the plaintiff had neither stated the words nor the substance. He had merely stated the conclusions which he himself had drawn from the supposed libel, and which might be very different from those which the court would draw from it." The chief justice said: "We will consider of this case. I certainly have always thought it was necessary to state the libel." After taking time to consider, Lord Chief Justice Gibbs said: "We have looked into the case and into the cases on the subject, and though in some of the cases there are expressions which have carried this doctrine farther than was at first intended, we think it impossible that this declaration can be supported. It charges the defendant with publishing a libel purporting as is therein stated. ·In all actions for libels it is the province of the court to ·say whether the expressions complained of amount to a libel or not; and if this mode of declaring could be supported, the court would lose that jurisdiction, and it would be given to the jury." It has been held very clearly (2 East, 426) that in a plea justifying slander because the defendant heard it from another it is not sufficient to allege that the person referred to spoke words to the effect of those on which the action is brought; the words themselves must be set forth in the plea.

If the words themselves must be set forth, as seems to be the prevailing opinion, it is difficult to assign a sufficient reason, especially in actions for written slander, why the words should not be proved. The distinction between charging a libel according to tenor and charging it in words purporting to be the very words of the libel seems entirely arbitrary, and one for which no satisfactory reason can be assigned. Its effect would naturally be to discard the word "tenor" from every declaration as being at the same time useless and dangerous. But it is not easy to reconcile the rule which requires the words themselves to be stated with that which dispenses with their being proved. It would seem to consist with reason and with general legal principle that in all cases where the declaration professes to charge the very words the plaintiff should be held to prove those words, at least if they are in writing. The cases on this subject, however, are very unsatisfactory. Mr. Justice Buller, in his Nisi Prius (page 5), says: "It was formerly holden that the plaintiff must prove the words precisely as laid; but that strictness is now laid aside, and it is sufficient for the plaintiff to prove the substance of them." Mr. Buller does not inform us whether this rule is confined to words spoken or extends also to libels. His examples are of oral slander. There is too wide a range for those who are to determine in what cases the evidence proves the substance of the charge. The books do not, and perhaps cannot, furnish complete satisfaction on this point. It is clear that words spoken in the second person will not sustain a declaration charging the same words, if al-

leged in the declaration to be spoken of the plaintiff in the third person; and it is also clear that the slightest variation between the evidence and the charge, if it may indicate a ·different thing, is fatal. The case of Walters v. Mace, 2 Barn. & Ald. 756, is a strong example of this. The declaration charged that the defendant said of the plaintiff, "This is my umbrella, and he stole it from my back door." The evidence was that the defendant said, "It is my umbrella." &c. The variance was held fatal, because the words charged in the declaration applied to a particular umbrella, which was present, and the words proved applied to an umbrella which was absent. And yet the words "it is my umbrella," &c., may be spoken of a particular umbrella then present. There are many cases to the same effect; but they all turn upon the principle that the difference in language, though very slight, may denote a different offence. In such cases there is a plain and sufficient reason for holding the variance fatal.

In Rex v. May, 1 Doug. 193, it was held in an indictment for perjury, the words "in manner and form following, that is to say, &c.," do not bind the party to recite the instrument verbatim. This was an indictment against May for perjury in an indictment against the present prosecutor for an assault. It referred to the former indictment, and added, "which indictment was presented in manner and form following, that is to say," and then proceeded to set forth the indictment in hæc verba, but omitted a word contained in the original indictment. It was admitted not to have been necessary to recite the former indictment; but it was contended that the prosecutor had undertaken to recite it, and that, having done so, was bound to set it forth verbatim. A verdict was given for the plaintiff, and a rule was moved to shew cause why the verdict should not be set aside. The objection had been made at the trial before Buller, J., but was overruled by the judge, who said "that the word 'tenor' had so strict and technical a meaning as to make it necessary to recite verbatim; but that by the expression in this case nothing more than a substantial recital was requisite, and that the variance here was only in matter of form." The rule was granted, but was afterwards given up, and judgment was pronounced against the defendant. This, it is true. was not an action for a libel; and it was not necessary for the action to set forth the paper in which the misrecital by the omission of a word took place. But it is a very strong case to prove what I have said appears to me to be very unreasonable, that the plaintiff is not held to a strict recital, unless the word "tenor" is used. Still it is difficult to reduce the materiality of the variance to certain rules. Compagnon v. Martin, 2 W. Bl. 790, was an action for words in which it was held that, though all the actionable words laid in the declaration were not proved, the plaintiff might have a verdict for such as were proved. That, however, was an action

for words spoken, not written, and an action was sustainable for the words proved. Had the words which were not proved been left out of the declaration, no doubt would have existed in the case; and it was thought material that the judge directed the jury to disregard those words in estimating damages. Tabart v. Tipper, 1 Camp. 350, was an action for a libel. The words charged in the declaration were, "My sarcastic friend, by leaving out, &c." The libel produced in evidence was, "My sarcastic friend Moros, by leaving out, &c." The sole variance was that the word "Moros," which existed in the libel, was omitted in the declaration. And yet the reporter does not state that the declaration charged the words according to tenor. If an exact recital was unnecessary in an action for a libel. where the declaration purports to state the libel in terms, I feel some difficulty in accounting for this case. The omission of the word "Moros" does not seem to me to be a substantial variance. In 7 Taunt. 204, the declaration charged the defendant with saying "Hancock's wife is a great thief, and ought to have been transported some years ago." The words proved were, "Hancock's wife is a damned bad one, and ought to have been transported seven years ago." The variance was held fatal. In Barnes v. Holloway, 8 Term R. 150, words laid affirmatively were proved to have been spoken interrogatively, and this variance was held fatal. Yet it is clear that an interrogation may imply an affirmation, and may be so understood by the hearers. The court said, "Whatever the party may mean, the words must be proved as they are laid." There is "a manifest distinction between the same idea conveyed by words spoken affirmatively and interrogatively."

The person who looks into this subject will be surprised at finding how very unsatisfactory the cases are. I will now compare the libel adduced in evidence with that charged in the declaration.

The Chief Justice then proceeded to dissect the letter, and to compare with critical exactness the several sentences it contained with the counts in the declaration intended to set them forth, and observed that, though the imputations cast upon the character of the plaintiff were of equal atrocity with those charged in the declaration, and in some instances approached so nearly as to be substantially the same, yet were they in no instance exactly the same; and the verbal variations were such as at least to make the charges susceptible of a slightly different meaning from the proof. He concluded by declaring that upon the principles he had stated such variance, though slight, was fatal, and that consequently the verdict must be set aside, and a nonsuit entered.

NOTE. It is proper to state that the declaration was drawn without the inspection of the letter declared on, which was never seen by the plaintiff's counsel until produced on the trial.

and the only information possessed of its contents was derived from the recollection of witnesses who had heard it read. It should also be added that after the nonsuit was entered the chief justice, on motion of the plaintiff's counsel, directed that on payment of the costs the nonsuit should be set aside, and the plaintiff allowed to file a new declaration.